Good morning. May it please the Court. My name is Peter Wolf, Federal Public Defender. I represent Mr. Evans-Martinez. I think the issue that probably would be dispositive of this case is the question of notice under Rule 32. And that is especially so given the Tenth Circuit decision of yesterday, which we sent a Rule 28J letter upon, in which the government conceded that an upward departure that occurred without any notice required a remand for sentencing. And in this particular case, we have a situation where the pre-sentence report identified no factor warranting an upward departure. The government's sentencing statement and its motion for a downward departure, based on cooperation, didn't identify any factors warranting an upward departure. And we think, therefore, that Rule 32 required the district court to give reasonable notice that it was contemplating a sentence exceeding what was the advisory guideline, which, because of the application of mandatory minimum, was in this case 120 months. Well, once you get by the mandatory minimum and we get a pre-sentence report, a fixed sentence coming, a recommendation coming to the district court on that, what effect does Booker have on the overlay? Well, I think what the district court has to say is, well, as I understand the agreement, it gives the district court the latitude to go wherever he wants legally. It gives the district court the latitude to go wherever it wants after it correctly applies the guidelines. And in this particular case, it applies or determines? Well, applies the guidelines, including upward and downward departure motions under the pre-Booker standards for ruling upon those things. That's true. He has to give all that consideration, and then he looks at the statute, which has six or seven different elements that affect sentencing. Right. Can he do that, or does the plea agreement lock him in to the guideline sentence? Well, in this particular case, which was a pre-Booker plea agreement, there was an agreement between the parties that the district court would be bound by the guidelines. And we think that contract, when it was accepted by the district court on the day of sentencing, actually did lock him in. Does that make it mandatory, or does the district court have leeway? I think that when the district court accepted the plea agreement, which included an agreement between the parties that the district court would be bound by the guidelines, the district court was bound by the guidelines. But it's a question that didn't actually get specifically addressed in this case. And the reason, of course, is that the language of the plea agreement in the pre-Booker context was essentially telling the defendant what the state of the law was pre-Booker, which is the district court is bound by the guidelines. But if you look at it as a contract, and if the district court thought that there was some problem with that, or if the district court wanted to make it explicit, look, Booker has changed the legal landscape here. What does this language in your plea agreement now mean? Because if it means I'm really bound by the guidelines, maybe I'm not going to accept it, or maybe you guys are going to have to go back and rethink it. Well, how would he not accept it if he approved it? Wouldn't he accept the guidelines if he felt bound by the plea agreement? I don't think that because he went on to increase the sentence. Exactly. And one of the things that I think sort of pervades this case is the proposition that defense counsel was more or less asleep at the switch. But with the record we have here and the arguments we have here, I'm not raising that, obviously. Well, did the plea agreement give the district court, even after having accepted the plea agreement, the authority to depart, at which point? So essentially that would have been the regime in any event pre-Booker. And under the mandatory nature of the guidelines, the jurisprudence is quite clear that you have to give notice. Exactly. Under Rule 32. The argument that's made is, well, once the guidelines become discretionary, then it's more likely policy statements, and we've held that policy statements, non-binding policy statements don't require notice. If we revert to the ñ and I understand that's all pre-Booker. So then the question is, if you come back, maybe there are two lines of analysis here, and I'm just trying to sort out which you care to pursue or argue against. One is that the plea agreement puts in place its own regime, and whatever it agreed to at the time is the regime pre- or post-Booker. Under that construct, would the notice requirements have been required with the district court having the authority under the plea agreement to go upward, but if doing so would have had to give notice? I think that is true. But even post-Booker, under the jurisprudence of this Court, in the Cantrell case and the Mix case decided within the last week or two, and we sent a letter on Wednesday about that, I don't think anything has changed because what Cantrell said and what Mix makes clear is that the guidelines have to be dealt with correctly, and if they're not dealt with correctly, there has to be a remand for resentencing. And so here it's clear that the district court was engaged in an upward departure. And the reason that's clear, if there was any doubt about it at all, is that the defendant had waived his appeal except in the case of an upward departure. And immediately after announcing the 15-year sentence, the district judge told the defendant, as he was advising him of his right to appeal, well, there was an appeal waiver in this case, but that's done away with because, in effect, I've upwardly departed. So your appeal right is existing. It's you can appeal, which indicates the district court itself understood that it was upwardly departing. What it apparently overlooked was the requirement of Rule 32H and the ---- Well, I have a little bit of a problem with your construction of the use of the term departure now. We trial judges over the years have been using guideline language, so departure is part of our parlance in sentencing. But under Booker, a trial judge may use the term departure but not really mean departure, which triggers this question for me to you, sir. Was the court's sentence really a, quote, departure, close quote, under the guidelines, or was it a decision after applying the section 3553A factors to send the defendant to 180 months, which happened, which has happened, to exceed the guideline sentence of 120 months, lasted 24 months for substantial assistance? And the reason I'm asking that question is because it may implicate the right to appeal because if it was not a departure, then you may have waived your right to appeal because you didn't waive your right to appeal, not you, but your client, except for an upward departure. Now, if it truly was not an upward departure, then we may not have a basis for appeal. Well, here's what the district court said about it. I think it's clear it was a departure. But the district court said in addressing the assistant U.S. attorney now, Mr. Tong, there was a non-appeal provision in this plea agreement, but I believe that was if the court sentenced him within the guideline range. Is that right? Mr. Tong indicates that's correct. I believe he would be entitled to appeal. The district court then says, all right, so because the court sentenced you above the guideline range in this case, the statutory, within the statutory minimum, taking as the Supreme Court has directed all the factors into consideration – I've looked at this very carefully – you do have the right to appeal your sentence. The non-appeal or the non-appeal waiver provision in your plea agreement is of no force in effect since the court sentenced you above the government's recommendation. That's at pages 78 and 79 of the excerpt. Let me ask you this. If we were to remand this back to the district court for reconsideration, under what guidelines or what rules would we be sending it back to him from your perspective? You would send it back for resentencing with notice to be given under Rule 32H, and then, as the Supreme Court indicated in the Burns case – So we start all over. We do a pre-sentence report again, right? Well, I don't know if we need to do a new pre-sentence report. We need to do a new sentencing here. Why not? Well, that's what I'm asking. You don't want a new pre-sentence report. You want the old pre-sentence report, right? Whether we have the old one or a new one is, I don't think, that important. But what is necessary is that there be notice. All right. Then what standard would we direct the district court to apply in imposing the sentence, the guidelines or the statutory provisions or both? I think that because of the terms of the plea agreement, which contract the parties and when the district court accepts it, the district court to apply the guidelines, I think that it would have to – it should be remanded to apply the pre-Booker guidelines regime. And ignore the statute? Yeah. Ignore the statute. And ignore Booker? Ignore Booker. Okay. I just want to know where you're coming from. All right. Well, I'm about down to 40 seconds, so unless there's a question, I think I'm going to ask a couple questions. All right. Go ahead. Was your client – was a trial court, sentencing court, bound by paragraph 14 of the plea agreement regarding the sentence under the sentencing guidelines, considering that paragraphs 11 and 19 provide stipulations that the sentencing did not bind the which I think you argue binds the court to mandatory sentencing guidelines. In this case, by reason of contract law. But then paragraphs 11, 14, and 19 appear to provide stipulations that the court really isn't bound by those provisions. Well, I think that the way to harmonize those provisions is to acknowledge that the plea agreement bound the court to apply the guidelines regime, but within that regime, the court could reject or make other determinations a fact that would drive the guidelines. And so I think we're in a situation where if the court was going to upwardly depart, it needed to both identify the grounds and then apply the appropriate standard of proof before granting such a departure, which is quite a bit different than the post-Booker regime as I see it. That takes me to the next question, which seems to interrelate with the previous question. You apparently contend that this particular plea agreement was tantamount to 11C1C plea agreement. I believe you've urged that in your briefs. And the sentencing court, by using the word, quote, except in close quote, the plea bargain, was bound by that. But reading the plea agreement, there's no reference to 11C1C. There's a reference to Rule 11. There's no statement by this Court, as far as I could find on the record, either the change of plea proceeding or the sentencing proceeding, whereby he specified that he would be bound by a specific sentence. No, I don't think it was an 11C1C plea agreement. You're withdrawing that position. Well, I don't think we took it. But to the extent that this Court thinks we took that position, then I withdraw it, because what we were saying is that he was bound to apply the guidelines. Our first position is he was bound to apply the guidelines in the pre-Booker regime. And that has a material effect on the case, because the standard of proof for an upward departure is quite a bit different than the standard for a post-Booker variance in what the sentence could be going up from what the guideline range is. And we think in this particular case that difference is of a benefit to Mr. Evans-Martinez. In other cases, obviously, the post-Booker regime may favor the defendant. Right here, it doesn't. And, of course, that's why we're taking this position. Okay. Well, I've run out of time, so. We'll give you a minute for rebuttal. Thank you. And we'll hear from the government. May it please the Court, good morning. Tom Ehrlich for the United States. Your Honor, my understanding now, after consulting with the office, that the Department of Justice now, as a policy decision, is conceding that 32H notice is required post-Booker for deviations or departures above or below the guidelines. And as a policy decision, the Department has noticed there have been inconsistent positions taken, and this is certainly highlighted in the 20HA notice that we've received as the Tenth Circuit Dozier case. So what do we do, counsel? Plain error analysis, Your Honor, on this case. We concede that there was error in that the defendant did not have adequate notice under 32H. We concede – I think you can say that the – I could make some argument that the error is not plain because it's not clear or obvious under the law at the point we cited the Garcia case. But I would rather go and argue for this purpose or concede for this purpose that the error was plain, there was error, it was plain, and it affects his substantial rights, and simply go into the position here and ask the Court to agree that this error did not severely or seriously affect the fairness and liberty. Well, I think the sentence is so far off the mark in terms of what this defendant must have understood when he signed that plea agreement. I have no way of knowing for sure. But I get – you know, you listen to TV and you find some school teacher takes advantage of a 14-year-old student and then gets probation, and then you look at this case and this guy's in for 15 years, and you're wondering, you know, what's going on in American society anyway? I get the feeling from reading the plea agreement, the parties pretty much came to the agreement. I mean, if he got the 120 months, both sides would have had to give a little and take a little to get it. And it seems to me because Congress has said that's the minimum and this is an Indian reservation case, then 120 months is what I sort of feel was a reasonable sentence. But I'm not the trial judge, and I shouldn't be imposing my thoughts on the trial court. But I want to know what the government did to assert the 120 to the district court as a reasonable sentence. And if you didn't, why didn't you? Well, I was not the trial attorney, Your Honor, so I'm coming with a little bit of disadvantage there reading the record. But I understood that the defendant was on notice, that it was a mandatory minimum 10-year sentence. The defendant in the pre-sentence report was aware of all the aggravation. The defendant was put on notice early on in the argument that the court found that the remorse was very little, banality of remorse. Tell him you're going to bring a third party in to lay it on with a debby trial? Well, he was not. It's not in the agreement. It's not in the agreement, Your Honor. It was pretty devastating, and it certainly affected Judge Ezra. I disagree that it was devastating, Your Honor. I submit that it was not overwhelming, it was not inflammatory, and it was not prejudicial or substantial. The defendant had already been noticed through the pre-sentence report, and the court was well aware that he had molested a daughter. The court was put on notice and the defendant was put on notice early on. And the court asked, who are these people here? And it was told it was a Sergeant Grisham, I believe. The defendant was also aware that there were pictures of inappropriate actions with him and his daughter, sexual abuse of a daughter, pictures. He knew all that when he entered into the plea agreement. But are you suggesting that there is some sort of no harm, no foul on failure to give notice? The whole purpose of notice is to allow the defendant, in the face of such overwhelming circumstances, to mount the best he can. We agree. So how could it be? I don't understand how notice is required. If notice is required, how can one take a look at what happened here on the ground without notice and say with any degree of confidence that it made no difference? We agree there was error. We agree that under the plain error analysis, it was not egregious in the sense that it doesn't affect the integrity of the sentencing or the public's confidence or in the judicial system, Your Honor, under this case. The defendant agreed. There was no mitigation in this case. The defendant agreed to 99 percent of the aggravating factors that were listed in the pre-sentence report. The Court is well aware, and under 3553, the Court should take into consideration these factors. These factors, this other criminal conduct, although it was not charged, the defendant agreed as part of the plea agreement that the government would have a right to prevent and to present matters in full aggravation and mitigation. The defendant presented those. The defense had an opportunity to rebut those, to contest those, to argue those. They did not. As far as the sergeant, the father of the one victim, the defendant did not object. It was bland, we submit, compared to what it was. He was told, the victim was told to keep his remarks down and not bring out any animosity. And the record seems to indicate that, Your Honor. Well, the cold record, I'm sure, is hard to capture. There were times when the sergeant understandably choked up, one could tell. He did. He said, I'm sorry. I would not have – I do not believe that that was a bland occurrence under any circumstance. It diminishes the purpose and effect of why that sergeant legitimately was there. So just calling bland, I just think, is not the right approach. But let's go to the question that Judge Beeser raised about a remand. What would be, assuming we don't accept the plain error, and I haven't said we're just deciding that, but just assuming we didn't and we do remand, then what regime applies? Counsel argues that what applies is pre-Booker, because that's what was bargained for in the plea agreement and that the standard of proof or burden on the government to justify the upward departure is different. Could you address that? Yes, Your Honor. First of all, the addendum to the pre-sentence report advised or indicated that the guidelines were advisory. The defendant indicated that he had no problem or indicated that he didn't object to the statement that the guidelines were advisory in the pre-sentence report. It was clear that Booker came down. Everybody was aware of that. The pre-sentence report called these guidelines advisory. The defense didn't object to that in any filings or in the argument. We would say there's a post-Booker position and a post-Booker error at this point. And under post-Booker, these factors in aggravation are proper for the Court to consider. In fact, we submit the Court would be derelict if it didn't consider these factors in forming an appropriate sentence to protect society, to recognize the repeated violations of this defendant. Okay. Unless the Court has any particular question. Well, do you concede that the Court was bound by the provisions of the plea agreement and had the sentence under the guidelines, even though Booker applied at the time of sentencing? Would I concede? I'm sorry, Justice. Do you concede that, pursuant to the agreement, that the Court had to sentence pursuant to the guidelines by reason of the plea agreement, even though Booker applied at the time of sentencing? Well, the Court had to consider the guidelines under Booker. Of course, the advisory guidelines, I don't think that Booker was bound by the guidelines. Well, that's true, but it was bound by the guidelines. But as I understand it, the argument is that because of the plea agreement, the Court had to sentence under the guidelines. Well, no. I think it was clear in the change of plea that the – and at the time of sentencing, the defendant understood that the guidelines were advisory, that the Court would – would initially, when the plea agreement was signed, yes. But at the time of sentencing, it was clear that Booker had come down, the guidelines were advisory, the Court was free and had to consider them, certainly, and did, but was free to go outside the guidelines and consider the factors of 3553. But the Court, at the time the plea agreement was taken or the time the plea agreement was signed and the change of plea, yes. But all parties understood that the law has changed and that the guidelines were only advisory. And the Court was – had to calculate them under, well, certainly under Mix and has made that calculation, did make that calculation of 120 months for the guideline. But that by statute, which the defendant was well aware of, by statute he was up to 20 years. It was a 10-year to 20-year statutory guideline, so to speak, with a mandatory minimum of 10. And I don't see that the defendant was misled in any capacity as to what role the guidelines had at his time of sentencing, Your Honor. If he had been given time and notice of intent for an upward departure, assuming that the guidelines were the applicable sentencing scheme, could he not have moved to withdraw his plea of guilty if the Court was going to proceed on the guidelines to an upward departure, which was unanticipated at the time of the plea? Or could he have alternately said, now I want you to sentence me under the 3553A, the discretionary sentencing, because I think I may get a better deal through that analysis? I haven't considered that, Your Honor. Yes. What I'm saying is this notice of intent, notice of intent, gives the defendant an opportunity to respond to the ramifications based on the proposals of an upward departure. Well, based upon the defense theory of what the best way to get the sentence in this case was that they admitted that there was no mitigation. They admitted that this was a terrible situation and a terrible tragedy in this family. I don't know that they had notice of all the bad, all the aggravating factors in the pre-sentence report. There was nothing that was sprung on them. They knew early on in the argument hearing that the Court saw this was a very serious offense, that his remorse was a – I think the term used was a banality of remorse that Judge Ezra used, and that then he was sentencing under the guidelines. Yes. The upward departure has to be grounded in a – some sort of basis under – I forget the name of that case, the – whatever – one of those officers in that Bing and Rodney King – remember? Kuhn. Oh, Kuhn. The Kuhn case. Kuhn case. Okay. And he has to state the reason. Yes. I assume the Court would state the reason, I'm considering an upward departure for this reason. Now, that gives the defense an opportunity to respond to address that particular question.  If the defendant was to be sentencing under the grounds or basis for a departure in writing and to prepare – Yes. This was sprung on the Defendant's counsel at the time of sentencing. Well, I'm going to – I think the judge was really sentencing under 3553A. I think the Court at the time of sentencing told the defendant that any – if there was a departure motion, the Court didn't have to accept the departure motion, that the Court was – was free to ignore the government's – Well, that was a downward departure for 5K1.1. Yes. We're talking about an upward departure, but the Court still responds to it. Yes. Would the defendant not have any opportunity really to respond except addressed at the time of the sentencing? At the time of sentencing, we submit he had the opportunity and was on notice at that time. He was on notice before of the aggravating nature of it and was certainly on notice at that time that the district court judge found the aggravating factors to be overwhelming. Okay. I think we have your argument. Yes, sir. Thank you. Counsel, you can have a minute for rebuttal. Thank you. I think the critical aspect of this case to recall is that the notice the defendant had of any departures was the government's motion for a downward departure based on cooperation. So based on that, I think it was unanticipated, despite the negative facts that were in the pre-sentence report and so forth, that the Court would be contemplating going upward. And, in fact, Judge Ezra purported to grant the government's motion for a downward departure, and then he said some things that seemed to suggest that all that did was release him from the obligation for the next 10 years. Well, he also said he would have gone higher than 15. So I think he factored it in there. He would have gone to 20. Right. He got five for cooperation. But in the situation of a plea agreement where the government agreed to forego prosecution of certain other information, if there had been notice of this, it's possible the government might have been put in a position where they had to urge the judge not to grant the upward departure because of the need to extract cooperation from future defendants. Just one question. You don't disagree that the supplemental PSR made clear to everybody at the time of sentencing that the guidelines were discretionary? It did say that. It did. All right. Thank you very much, counsel. We appreciate the argument. The case argued is submitted.
judges: Beezer, Fisher, Timlin